DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| David Wehrle, ) | |
| ) | APPEAL CASE NO.  5:09 CV 2930 |
| Appellant, ) | |
| ) | BANKRUPTCY COURT CASE NO. 09- |
| v. ) | 54101 (CHAPTER 11) *(In re Akron* |
| ) | *Thermal, Limited Partnership, Debtor)* |
| City of Akron, ) | |
| ) | |
| Appellee. ) | MEMORANDUM OPINION |
| ) | |

This appeal requires the Court to unravel a convoluted series of events occurring in the captioned Akron Thermal bankruptcy case (No. 09-54101) ("the Second Bankruptcy Case"); an earlier Akron Thermal bankruptcy case (No. 07-51884) ("the First Bankruptcy Case"); and an appeal from an order in the First Bankruptcy Case ("the First Appeal").  The Court notes at the outset that the bankruptcy court has described the costs already associated with these cases as "phenomenal."

Presently before the Court is the Motion of Appellee City of Akron ("City") to Dismiss the Appeal (ECF 5) ("the Motion").[1]  Appellant David Wehrle ("Mr. Wehrle" or "Creditors' Trustee") has responded to the Motion (ECF 9); the City has replied (ECF 14); and Mr. Wehrle has sur-replied (ECF 18).  For the reasons that follow, the Court finds the City's Motion to be well taken.  The Court will accordingly dismiss the appeal.

---

[1] The Court earlier granted the City's motion to suspend briefing on the merits pending a ruling upon the City's Motion to Dismiss.  *See* ECF 13.

(5:09 CV 2930)

## I. Factual and Procedural Background

A.    <u>The First Bankruptcy Case</u>:

Debtor Akron Thermal, Limited Partnership ("Akron Thermal" or "Debtor") is a utility company that operates steam-generating plants and a distribution system leased from the City of Akron. After Akron Thermal defaulted on its lease with the City ("the Lease"), the City sent Akron Thermal a notice of intent to terminate the Lease, whereupon Akron Thermal filed its first Chapter 11 petition on June 18, 2007 (Case No. 07-51884) ("the First Bankruptcy Case"), thereby preventing termination of the Lease due to the automatic stay provisions of the Bankruptcy Code.

Eventually, on January 26, 2009, the bankruptcy court entered an order ("the Confirmation Order") confirming a reorganization plan ("the Plan"). As part of the Plan, Akron Thermal (as Reorganized Debtor) was to assume the Lease with the City and pay the City $2,541,103.09 as a "cure payment" for past-due amounts ("the Plan Payment"). Also as part of the Plan, Akron Thermal was to issue a promissory note for $2,060,000.00 ("the Note") to the Trustee of the [Unsecured] Creditors' Trust ("the Creditors' Trust") created under the Plan. The note was to be secured by a "first priority lien upon all of Reorganized Debtor's assets." Mr. Wehrle was appointed Trustee of the Creditors' Trust.

B.    <u>The First Appeal, Stage One</u>:

On February 5, 2009, the City filed a notice of appeal [2] of the Confirmation Order (the "First Appeal"); and it filed motions to stay in both the bankruptcy court and the district court.

---

[2] The City was essentially dissatisfied with the amount of the Plan Payment.

2

(5:09 CV 2930)

The bankruptcy court denied the City's first stay motion on February 10, 2009; and the district court denied the second stay motion on February 19, 2009. The First Appeal was assigned to Judge John Adams (Case No. 5:09CV601). No cross appeals were filed.

Following the district court's denial of the City's motion for stay, the Plan became effective on February 20, 2009. Accordingly, and notwithstanding the pendency of the First Appeal, Akron Thermal (as Reorganized Debtor) assumed the Lease with the City; delivered the "cure" Plan Payment check to the City in the amount of $2,541,103.09; tendered the secured Note for $2,060,000.00 to the Creditors' Trustee Mr. Wehrle; made many other payments and transfers pursuant to the Plan; and continued to engage in its day-to-day business. [3]

The City negotiated the Plan Payment check and placed it into a segregated account, although the Plan did not require the Plan Payment funds to be segregated or escrowed. The Plan Payment check cleared the Debtor's account on February 24, 2009.

On March 20, 2009, the Debtor filed a motion to dismiss the First Appeal as equitably moot on the grounds that the Plan had been substantially consummated. On June 17, 2009, the motion was granted in part and denied in part, with the district court holding that, except for two issues which do not concern us here, [4] the Plan had been substantially consummated despite the City's contention that since the City had not "accepted" the $2,541,103.09 Plan Payment check, the Plan was not substantially consummated.

---

[3] Akron Thermal had been infused with new capital of $3,000,000.00 on the day the Plan became effective.

[4] The two "non-moot" issues were whether the City was entitled to indemnity under the Lease for EPA violations; and whether the "cure" payment amount should have been higher.

3

(5:09 CV 2930)

The City's position was that its negotiation of the Plan Payment check was not an "acceptance" of the Plan Payment; that it had cashed the check only because its motions to stay the Plan's effectiveness had been denied; and that it had segregated the Plan Payment funds. The City proposed that the City could hold the amount of the Plan Payment in escrow pending resolution of the issues on appeal. [5] The district court, stating that "the Court affords little weight to the fact that the City has held its funds separately," found that "there is little question that the Plan has been substantially consummated." No. 5:09CV601, ECF 14 at pp. 5, 13. Thus ended stage one of the First Appeal.

C.  The First Appeal, Stage Two:

Sometime after Judge Adams dismissed the First Appeal in part on June 17, 2009 (but before the two remaining "non-moot" issues had been ruled upon), the City removed the Plan Payment funds from the segregated account. [6] Akron Thermal then experienced further financial difficulties to the extent that it appeared likely that the Plan would fail and that Akron Thermal would go out of business; [7] and on August 18, 2009, Mr. Wehrle, as the Creditors' Trustee who was not a party to the First Appeal and who did not move to intervene in the First Appeal, filed an Escrow Motion in the First Appeal. In the Escrow Motion, Mr. Wehrle sought to have the

---

[5] Despite the fact that the Creditors' Trustee was not a party to the First Appeal, he nonetheless filed a brief in support of the Debtor's motion to dismiss the appeal.

[6] Mr. Wehrle claims that the timing is critical here, because if the City did not "accept" the Plan Payment until after June 17, 2009, the acceptance would be an avoidable preference in the Second Bankruptcy Case which was filed on September 11, 2009. *See* ECF 9 (in this case) at p. 8.

[7] Akron Thermal lost a major customer and applied to the PUCO for an emergency rate increase which the City opposed and which did not appear likely to be approved by the PUCO.

(5:09 CV 2930)

City's Plan Payment funds placed in escrow until the conclusion of the First Appeal, based upon his theory that the City had not accepted the Plan Payment funds [8] and that the funds might eventually be construed to be part of the Debtor's estate in the Second Bankruptcy Case and thus available to pay the unsecured creditors from the First Bankruptcy Case.

While the Escrow Motion was still pending in the First Appeal, on September 11, 2009 Akron Thermal filed its Chapter 11 Second Bankruptcy Case.

D.  The Second Bankruptcy Case and the "Lift Stay" Motions:

After the filing of the Second Bankruptcy Case on September 11, 2009, Judge Adams stayed and closed the First Appeal pursuant to the automatic stay in the Second Bankruptcy Case. Shortly thereafter, both the City and Mr. Wehrle filed motions with the bankruptcy court for relief from the automatic stay in the Second Bankruptcy Case ("the Lift Stay Motions"). The City's Lift Stay Motion sought relief in order to move Judge Adams for leave to dismiss the First Appeal with prejudice. Mr. Wehrle's Lift Stay Motion sought relief in order to move Judge Adams to rule upon his Escrow Motion before allowing the First Appeal to be dismissed.

By Order entered November 2, 2009, the bankruptcy court granted the City's Lift Stay Motion and denied Mr. Wehrle's Lift Stay Motion. In the process of analyzing the factors to be considered [9] in determining whether cause existed to grant Mr. Wehrle's Lift Stay Motion and thereby allow him to pursue his Escrow Motion in the First Appeal, the bankruptcy court

---

[8] Mr. Wehrle propounded this "non-acceptance" theory despite the fact that, in Stage One of the First Appeal, he had filed a brief in support of the Debtor's motion to dismiss the First Appeal as equitably moot due to the substantial consummation of the Plan.

[9] *Citing Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir. 1990).

5

(5:09 CV 2930)

emphasized the factor of "the interests of judicial economy and the expeditious and economical resolution of litigation" and concluded as follows:

> To grant relief from stay in this matter would result in a superfluous accumulation of legal costs and waste of judicial resources. Granting relief to the [Creditors'] Trustee would unnecessarily contribute to the phenomenal costs already associated with these cases.

ECF 1-2 (November 2, 2009 Order) at p. 9.

In order to reach this conclusion, the bankruptcy court examined the potential merits of Mr. Wehrle's Escrow Motion and concluded there was "no basis at law" for the Motion because "the City accepted the [Plan Payment] funds, it owned them as of the date of the [Second Bankruptcy Case] petition and they are not part of the bankruptcy estate [in the Second Bankruptcy Case]." ECF 1-2 at p. 8. On November 5, 2009, Mr. Wehrle filed a notice of appeal from that Order; and that is the appeal presently before this Court ("the Second Appeal"). Mr. Wehrle did not move to stay the bankruptcy court's Order pending this Second Appeal.

E.      The First Appeal, Stage Three:

Returning to events transpiring in the First Appeal following the notice of appeal resulting in this Second Appeal, by a two-page Order entered December 1, 2009, Judge Adams granted the City's motions to re-open and to dismiss the First Appeal with prejudice. [10] In that Order, Judge Adams addressed Mr. Wehrle's opposition to the City's motion to dismiss the First Appeal as follows:

---

[10] The dismissal of the First Appeal was entered after the within Notice of Appeal was filed in the bankruptcy court on November 5, 2009, but before the record on appeal was transmitted to this Court on December 17, 2009.

6

(5:09 CV 2930)

>With respect to the motion to dismiss, the Trustee contends that the matter should not be dismissed before it is able to obtain a ruling on its motion for a return of funds that were previously paid to the City. The Trustee's argument has no merit.
>
>First, as there is no cross-appeal in this matter, the Court doubts that the Trustee has any standing to oppose the current motion to dismiss. However, the Court need not reach that determination. Instead, the Court notes that the Trustee also sought relief from the stay in the bankruptcy court. The Trustee specifically sought leave to have this Court rule on its motion for return of the funds. The bankruptcy court denied the Trustee's request for leave. The Trustee's sole argument herein asserts that this Court should refrain from dismissing the appeal until the Trustee has appealed from the recent denial of its motion for relief from stay. The Court declines to do so.
>
>The Trustee's arguments were heard, considered, and rejected by the bankruptcy court. Furthermore, this Court is by no means convinced that the Trustee may even seek the return of its funds through the appeal before this Court. As a current bankruptcy is proceeding, that appears to be the proper forum for the arguments presented by the Trustee. Additionally, the Court notes that the Trustee's filing in this matter strongly resembles a motion to stay the bankruptcy order dated November 2, 2009. This is not the proper forum to make such a request. Finally, the Court notes that the Trustee will suffer no prejudice from this dismissal. There is no indication that the funds sought by the Trustee will be unavailable if his appeal is successful, and such a successful appeal would no doubt lead to this matter being reopened. Accordingly, the City's motion to dismiss is GRANTED. The appeal is hereby DISMISSED.

Case No. 5:09CV601 at ECF 36.

F.     <u>The Appeal Presently Before This Court (The Second Appeal)</u>:

With respect to the merits of this Second Appeal, Mr. Wehrle has presented eight issues for review. See ECF 6 at pp. 2-3. Most of the issues go to the question of whether (and when) the City "accepted" the Plan Payment and whether the Plan Payment funds from the First Bankruptcy Case are somehow part of Akron Thermal's estate in the second Bankruptcy Case. If the Court were required to address the merits of this Second Appeal, the Court would almost

7

(5:09 CV 2930)

undoubtedly affirm the bankruptcy court's Order entered November 2, 2009 (ECF 1-2) based upon its excellent and well reasoned opinion. However, the Court need not reach the merits of the Appeal because the Court finds the City's Motion to Dismiss the Appeal to be well taken.

## II. Law and Analysis

The City's Motion asserts three grounds for dismissing the Appeal: (1) that the Appeal is moot; (2) that the Appeal is not ripe; and (3) that Mr. Wehrle lacks appellate standing. The Court concurs with the City on all three points.

1. <u>The Appeal is Moot</u>.

As noted earlier, in his Escrow Motion filed in the First Appeal, Mr. Wehrle sought to have the City's Plan Payment funds placed in escrow until the conclusion of the First Appeal. After the bankruptcy court denied his Lift Stay Motion by Order entered November 2, 2009, Mr. Wehrle appealed the Order but he did not move to stay the Order pending resolution of this Second Appeal. Accordingly, Judge Adams proceeded to consider – and to grant – the City's motion to dismiss the First Appeal with prejudice. At that point, the First Appeal was concluded; the Escrow Motion was mooted; and there is no case or controversy for this Court to consider.

2. <u>The Appeal is not Ripe</u>.

As noted above, most of the issues presented in this Second Appeal go to the question of whether (and when) the City "accepted" the Plan Payment and whether the Plan Payment funds from the First Bankruptcy Case are somehow part of Akron Thermal's estate in the Second Bankruptcy Case. In other words, Mr. Wehrle asks this Court to decide whether Akron Thermal

8

(5:09 CV 2930)

or Mr. Wehrle has any interest in the Plan Payment funds. But Mr. Wehrle has not asserted either a claim against the City or a claim to the Plan Payment funds. Nor does he have standing to present such claims (*See* discussion below in the next section). As the bankruptcy court observed in evaluating Mr. Wehrle's Lift Stay Motion:

> The [Creditors'] Trustee's motion for turnover [*i.e,* the Escrow Motion] does not set forth with specificity a claim against the Plan Payment that it seeks to have placed in escrow. It says only 'the City should turn over the Plan Payment subject to a later determination of whether the City is entitled to it if Akron Thermal goes out of business and is unable to pay other creditors the payments they were promised under the Plan. The [Creditors'] Trustee submits it will be very difficult for the City to present a viable argument that it is entitled to such funds if it succeeds in defeating Akron Thermal's emergency rate case before the PUCO which it knows and expects will force Akron Thermal to liquidate.'

ECF 1-2 (November 2, 2009 Order) at p. 3.

The Court concludes that the issues presented by Mr. Wehrle are not ripe for review.

3.  <u>Mr. Wehrle Has No Appellate Standing</u>.

Bankruptcy appellate standing is conferred only upon a "person aggrieved" by the order he seeks to appeal; and a "person aggrieved" means a party directly and adversely affected pecuniarily by the order. *See, e.g., Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.),* 555 F.3d 231, 235 (6th Cir. 2009); *Moran v. LTV Steel Co. (In re LTV Steel Co.),* 560 F.3d 449, 452-453 (6th Cir. 2009).

In the present case, the Court finds that Mr. Wehrle is not a "person aggrieved" by the Order he appeals from. As the City has explained the situation in its brief supporting its Motion to Dismiss:

> Here, Wehrle is not directly and adversely affected by the Order and Opinion. In particular, the Bankruptcy Court's rulings with respect to whether the City

9

(5:09 CV 2930)

> accepted the Plan Payment and whether Wehrle or Akron Thermal have any rights to the Plan Payment do not have a direct effect on Wehrle.  If there was any basis for a claim that the Plan Payment should be recovered, that claim belongs to Akron Thermal, not Wehrle.  Wehrle is simply an alleged secured creditor of Akron Thermal.  Accordingly, any dispute as to the acceptance or ownership of the Plan Payment, a payment made by Akron Thermal to the City, does not belong to or directly affect Wehrle.  Wehrle is merely a third party who asserts he has a stake in the Plan Payment if, and only if, such payment somehow belongs to Akron Thermal.  In this setting, any stake or claim Wehrle has to the Plan Payment could only possibly be derivative of Akron Thermal's claim.

ECF 5 at p. 13.

It can hardly be over-emphasized here that Mr. Wehrle has filed this Second Appeal in his capacity as Trustee of the Creditors' Trust created in the First Bankruptcy Case.  He therefore stands in the shoes of a creditor.  A creditor, secured or unsecured, of a bankruptcy estate has no standing to appeal directly from an order affecting the *debtor's* right to pursue an avoidance action or to assert a claim against another creditor such as the City of Akron in this case.  The proper remedy would have been for Mr. Wehrle to move the bankruptcy court for an order requiring Akron Thermal to appeal the subject Order, or for permission to appeal if Akron Thermal declined to do so.  *See Marlow v. Rollins Cotton Co. (In re Julien Co.),* 146 F.3d 420, 423 (6th Cir. 1998); *Wells v. Dickerson (In re Wells),* 403 F.2d 635, 636 (6th Cir. 1968).

Finally, the Court understands from the parties' briefs that Mr. Wehrle has recently moved the bankruptcy court for an order granting him derivative standing to pursue claims against the City on Akron Thermal's behalf, pursuant to the so-called "Gibson factors" set forth in *Canadian Pacific Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group),* 66 F.3d 1436, 1446 (6th Cir. 1995).  The bankruptcy court's eventual ruling on that motion may or may not

(5:09 CV 2930)

confer derivative standing upon Mr. Wehrle.  But that does not affect his present status in this Appeal.

The Court concludes that Mr. Wehrle has no standing to pursue this Appeal.

### III.  Conclusion

For the reasons set forth above, the Motion of Appellee to Dismiss the Appeal (ECF 5) is sustained.  The Court will dismiss the appeal by separate judgment entry filed herewith.

IT IS SO ORDERED.

| | |
|---|---|
| February 16, 2010 | *s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |